Mr. Conley, and before we get started, you can head this way. And before we get started, you all may or may not know now, but Justice Lytton is unavoidably detained. But we'll be participating in the decision, listen to oral arguments, and participate in deciding the case. So, fire when ready. He came due to help, not by a police officer. Absolutely, Your Honor. Your Honors, good afternoon. Good afternoon, counsel. If it may please the court, my name is Sean Conley. I'm with the Office of the State Appellate Defender, and I represent Appellate Joshua Sundberg. I would like to take this opportunity to acknowledge opposing counsel who did not write the briefs in this case and to thank him for his presence today. Mr. Sundberg was convicted after a bench trial of one count of aggravated battery and sentenced to six years incarceration. He raises two issues on appeal, one alleging that the trial court relied on evidence outside of the record, the other alleging that Sundberg's right to be present at a critical stage was violated. I will be discussing the first issue. That issue argues that the trial court resolved the question, or a question of credibility, in part by relying on its own technical evaluation of the cause of the victim's wound. This had the effect of establishing an element of the offense, specifically the use of a knife, and of eliminating Sundberg's affirmative defense of self-defense from the judge's consideration, all through facts that were not properly in evidence. This court's decision in People v. White is directly on point. If White is good law, and we believe that it still is good law, it is outcome determinative. In the words of White, and as quoted by the Supreme Court in People v. Manage, the holding in White was that the ability to examine a cut and determine the instrument that made it is beyond the province of common knowledge. That is precisely what happened here. Here the trial court explicitly put its thought process on the record. The judge explicitly told us that he examined the cut and determined the instrument that made the cut based on the physical characteristics of the cut. We also, in this case, we've got the victim saying that it was cut with a knife. That is true. That is true. And if that's all that we had, the trial court could certainly make the same credibility determination based on that. And we would not be here today. However, on this record, that's not what happened. On this record, the trial judge explicitly told us that the credibility determination, the determination of what it was that caused the wound, and thus what it was exactly that the defendant did, was based on, at least in part, on his examination of the physical characteristics of the wound. Would you agree that if the judge would have simply said, guilty? I would absolutely agree with that. However, that's not what happened in this case. In this case, the judge went on to say that this cut looks like it was made by a knife. I do not believe it was made by a fist. It was made by a knife. And he based that determination, again, explicitly on the physical characteristics of the cut, the size of the cut, the orientation of the cut, the fact that it was straight and deep, and et cetera. This is not a situation in which the judge just said, you know, based on the testimony of the witnesses and the evidence I find for the state. This is a situation in which the judge said, I do not believe the defendant's argument because based on the characteristics of the wound, this is not a knife cut or this is not a fist. That's the sort of determination that White says is not acceptable because that's bringing in evidence not on the record. Well, the wound was certainly on the record, right? The wound was on the record, yes. And the judge examined the wound, examined the picture of the wound, and examined the wound as it existed in the courtroom on the witness. But again, the diagnostic characteristics of a cut by a knife versus the diagnostic characteristics of a cut by a fist is not acceptable. The diagnostic characteristics of a split caused by a punch is not within common knowledge. And that's the issue here. The state counters with three arguments. First off, that the trial court didn't rely on its examination. We discussed that. The trial court was explicit. The trial court was explicit in determining what made the cut. Second, the state argues that White's no longer good law, primarily because it hasn't been relied upon by any subsequent decisions. I would contend that there's no theory of jurisprudence that I'm aware of that endorses that sort of analysis. That expired? I'm sorry? It expired. Exactly. It's just not a reason not to follow a case. I would contend that it hasn't been relied upon because this is a thankfully rare fact pattern. This doesn't happen very often. There's no need to have dozens of sites to people be White. It hasn't been overturned. It's still good law. And while it's true that it's never been relied upon for this very narrow question of a knife wound or the diagnosis of the cause of a wound, it has been cited by Illinois courts, including the Illinois Supreme Court. And its reasoning on that narrow point has never been questioned. It's still good law, and it still applies to these facts. Third, the state argues that White is distinguishable because the disputed instrument in White was a piece of glass or allegedly a piece of glass, whereas here it's allegedly a fist. And I would simply argue that that's a distinction without a difference. The classification of the alleged implement didn't factor into White's decision, and it's not dependent. The White holding isn't dependent on the classification of the instrument. It's simply not common knowledge, the specific diagnostic characteristics of these kinds of wounds, which is why these sort of observations can't be relied upon. I would also note that the trial court in White was significantly more thorough in the analysis that it put on the record than the judge was in this case. Unlike in this case, the White judge's analysis of the witness's credibility also explicitly relied on other physical evidence on the record and other evaluations of the witness's credibility, other factors in terms of the witness's credibility. And yet this court still reversed in White. And it follows, again, that if White is good law, then it would be outcome determinative in this case. So unless there are questions, I think that this is a very simple application of that case. And if that case is still good law, then we would ask your honors to reverse and remand for a new trial. Thank you, Mr. Connolly. Mr. Austell. Thank you, police court, counsel. My name is Mark Austell, and I will be arguing for the people in place of Nadia Chowdhury today. Defendant argues in his first issue that when finding defendant guilty, the trial judge relied on his own evaluation of the victim's wound and not the facts and evidence to determine that the wound had been caused by a knife. This issue was not preserved and defendant claimed plain error in this particular case. This is a fact-driven case, so I'm going to spend a little time reviewing an overview of the facts that were presented. At the bench trial, the victim, Jared Fox, testified that he was walking toward a friend's house when the defendant called him over the phone and began screaming at Fox and threatened to beat him up. Fox was unaware of any dispute with defendant. Fox continued walking down the street, and defendant at some point pulled up in a truck and got out. As defendant approached Fox, he drew a Bowie knife from his sheath. Defendant yelled at and threatened Fox, who tried to reason with defendant, but defendant, still holding the knife in his hand, continued toward Fox. Fox reached into his pocket for his own knife before he could pull it out. Defendant struck Fox on his left temple with the knife that he had been holding. Calvin Heinlein was a mutual friend of both Fox and defendant, and he intervened and got defendant back into his truck. Fox was taken by his brother to the hospital for treatment, where he told medical personnel that he had been cut by a knife. Fox, in his testimony, acknowledged that he had been drinking that day. Defendant testified that he lived in the building where the incident took place. On the date of the incident, defendant was on his way home when he received a text message from the cell phone that Fox and his girlfriend used, stating that defendant owed to Fox or Fox would come to defendant's house. Defendant considered that message a threat. Defendant testified that he called Fox, and during the call he raised his voice and threatened Fox. He drove to his own residence, and when he arrived, defendant found Fox was there in the driveway. He exited his vehicle, and defendant walked toward Fox to confront him, and Fox began fumbling in his pocket at that time. Defendant felt threatened, and he said he hit Fox square on the face with his fist. Defendant stated that he had his knife on him, but he did not remove it from its sheath. He said the laceration on Fox's head was caused by his fist. Calvin Hainline intervened and got defendant back into his truck. Entered into evidence was People's Exhibit 1, which contains the medical records from Galesburg Cottage Hospital regarding the treatment of Fox's injury. The medical records contain an entry in which the treating doctor described the injury as a laceration to the left temporal area of Fox's face that had been caused by a knife. The doctor documented that Fox received eight sutures to close the wound. And the nursing documentation stated that the laceration was straight and approximately three centimeters long. Also admitted into evidence were two photographs of the injury taken on the date of the incident. In closing argument, the prosecutor focused on the medical records, the photos, and on defendant's credibility since he has prior felony convictions. And the prosecutor argued that self-defense did not apply in this case. Following the arguments, the trial judge, who in this case was Judge Stewart, accepted the people's credibility argument and found that the victim was more credible than the defendant. Judge Stewart then said, and I quote, as I look at this, I don't think an expert has to come in here and take a look at it. This is a clean cut. This appears to be a knife cut, not a split by a fist, and it's a deep one, and it's a straight line. I don't believe this was made by a fist, end quote. At the time of trial, Fox had a scar, so clearly the trial judge was looking at the photographs at the time he made the comment about the deep cut. Otherwise, he would not have been able to see that that cut had been deep. And at this point, the trial judge found that the defendant was guilty of aggravated battery. The defendant later filed a motion for a new trial, and the defendant's trial counsel argued that the defendant had been wearing a ring when he struck Fox with his fist. But the defendant never testified at trial that he had been wearing a ring when he struck him. At trial, the defendant noted that he had a scar under his own eye that he claimed had been caused by a fist, which clearly negates the trial attorney's claim that the defendant had been wearing a ring. The second judge, Judge Shiplett, initially heard the motion for a new trial, and he also found that the photographs of Fox's temple showed a knife wound. Judge Shiplett denied the motion, but he vacated his order and referred the motion back to Judge Stewart. Judge Stewart also denied the motion for a new trial, saying that he had heard the evidence, and he noted that Fox testified that the knife caused his injury. Judge Stewart reviewed the photos and said he would not grant a new trial on the basis that no knife had been recovered. In this case, Judge Stewart heard the testimony, and he reviewed the medical records and the photographs of Fox's injury. Judge Stewart made a credibility determination and found that Fox was more credible than the defendant. This court in Williams reiterated that credibility determinations are the responsibility of the trier of fact, and that a reviewing court will not reassess witness credibility. And our Supreme Court has held that the testimony of a single witness, if credible, is sufficient to convict. Thus, the credible evidence proffered at this trial supported the trial judge's determination that the defendant had cut and not hit Fox. The trial judge clearly did not rely on his own evaluation of the photographs alone in finding that the defendant had cut Fox with the knife. Of course, in this case, the trial judge was the trier of fact, and the trier of fact in criminal cases is to evaluate the evidence in light of his or her observations and experiences. The defendant cites this court's decision in White in support of his argument, but the case is factually distinguishable from White. In White, there was conflicting testimony about which of two sharp objects caused the wound to the victim's wrist. The victim said White cut him with a knife, and White said that the victim fell on glass. But in this case, there was no testimony that Fox fell, and there was no conflicting testimony regarding which of two different sharp objects had caused the injury. In this case, conflicting testimony indicated that the cause of the laceration was either a knife or a square blow to the face by a fist. And there were hostile records and evidence in which the doctor specifically stated that the wound had been caused by a knife. Thus, the holding of White is not applicable to this case. And further, the people argue that White was wrong in deciding. The majority in White agreed with White's argument that the conclusions reached by the trial judge required an expert's knowledge of glass and knife cuts and were not within the knowledge of ordinary laymen. The majority held, and I'll quote, the ability to examine a cut and determine the instrument that made it is beyond the province of common knowledge, end quote. Justice Hyperwin's dissent, though, stated, and I'll quote again, the trial court did not err when it commented on the nature of the victim's wound and noted that because it was a fairly straight cut, it did not appear to be the type of wound which would result from contact with a jagged piece of glass from a broken bottle. In making these comments, the court was doing nothing more than considering the evidence in view of common knowledge and the ordinary experiences and observations of light. It is well established that triers of fact are accorded the right to consider evidence in the light of their intelligence, common knowledge, and experience of mankind. Accordingly, the trial court's comments in this case were proper, end quote. The people submit that White's per se rule that no trier of fact determined in light of common knowledge whether a cut was made by one object or another, or as opposed to another, is ludicrous, really, and clearly denies triers of fact the right to use their own life experiences and observations in making decisions. Especially whereas in this case, the testimony indicated that the straight and deep laceration was caused by either a knife or a bare fist hitting the victim square on a temple. As the Supreme Court in Hopp indicated, triers of fact are not required to set aside the observations and inferences that they would ordinarily make. And the Hopp court also cited IPI criminal fourth number 1.01 at paragraph 10, which instructs jurors to consider the evidence, quote, in the light of your own observations and experience in life, end quote. The people asked this court to reject the majority holding of White and follow instead Justice Heifel's dissent in the Hopp court's statement of law. Well, isn't the bottom line question here, regardless of what the judge relied on or didn't rely on, isn't the bottom line whether the evidence was sufficient to convict? Certainly, that's it. This is a reasonable doubt case, and we had a credible victim who said he cut him with a knife. And the doctor in his report said it was a knife wound, a straight cut, a deep cut. And the defendant himself claimed it was a bare fist hit. And this argument that the trial counsel made in his motion for a new trial that the defendant had a ring on was never brought up in the testimony. And certainly, if the defendant had a ring on, he would have brought that up because that would have bolstered his case and made it very much stronger. And certainly, in the light of one's own experience, a knife cut compared to a hit, if you strike someone with a fist, there will be a bruise, there will be swelling. If you hit someone hard enough to cause the skin to split, it will not be a nice, clean cut as was in this case. And so I think the trial judge did not err in finding that this was a knife cut based on all the evidence that was presented in this case. What's the state's position on forfeiture of the issue? On forfeiture? Well, we feel that it was forfeiture because we didn't preserve this issue below. I don't think, and maybe I haven't read Ms. Chowdhury's brief carefully enough, but I don't think she addressed whether it was forfeited or not. Well, it was brought up that this was a plain error case. And off the top of my head, I don't recall specifically how the argument was made. And I apologize for that. I'll spend a little more time on other aspects of the case. And we do have a very brief argument about the second issue, even though counsel did not raise it. There was an assertion that there was no valid waiver of the defendant's presence at the hearing on his motion for a new trial, and he was asking for a remand for a new hearing on the motion. And we note that in Woods, our Supreme Court reiterated that the defendant's constitutional right to be present at trial does not embrace a right to be also present at the argument motions prior to trial and subsequent to a verdict. Thus, the defendant did not have a right to be present at the post-trial hearing on his motion for a new trial. And the defendant also asserted that the trial counsel's claim at that motion hearing that the defendant had been wearing a ring when he hit Fox was newly discovered evidence. And of course, the defendant would have known prior to and during trial whether he had been wearing a ring when he struck Fox, so that would not have been newly discovered evidence at all. And certainly if he had been wearing a ring, he would have brought that out in evidence because it would have strengthened his case. So people stand on the brief for all of their argument and ask this court to affirm the defendant's conviction and sentence and deny his request for a remand for a new motion hearing. Great. Thanks, counsel. Thank you. Mr. Connolly, some rebuttal. Your Honors, may it please the Court. I suppose my primary response is what does the bruise from such a punch look like? How much swelling is typical of a wound caused by a punch? I don't know. I think the common man doesn't know. And that's a good question, but let me ask you this. Sure. In reality, and first of all, did I hear you right the first time? Did you say you wanted a new trial? On the first issue, yes. Well, isn't the real issue here, regardless of what the trial judge did, because you're saying the trial judge couldn't have come to that conclusion. So isn't the real issue whether there was sufficient evidence to convict? I would respectfully disagree with that. This is a case in which there was an error, or we allege there was an error. The judge impermissibly brought in evidence that had not been properly submitted, that's outside of the record. You mean his own observations? His own observations. He explicitly based his credibility finding on those observations. Okay. Let's suppose he didn't use that. Okay. Let's suppose he didn't, then could he have been convicted? Yes, he could have. But this is not a reasonable doubt case. We're not arguing that on review we could sustain the standard necessary to overturn unreasonable doubt. That's not the question here. The question here is, was there an error? Under White, there clearly was. Was that error prejudicial? And in this situation, where the judge has explicitly told us that he would have considered the defendant's self-defense claim had he not made this erroneous determination, I contend that that is sufficient prejudice to remand the case. And the determination was that he was cut with an iron. That he was cut with an iron. Correct. But you said otherwise there was sufficient evidence for him to make that determination. Simply because a case cannot sustain, again, on review, which is not at the trial level. The judge is not beholden to the same standards that we are on review. Simply because I couldn't credibly make a reasonable doubt argument in this case doesn't mean that it doesn't merit remand. Why couldn't you make a reasonable doubt argument? The charge was battery with a deadly weapon. For the same reasons that Justice Schmidt is saying now. On this record, I think it's difficult to make a credible argument on that. But that's not the issue here. Okay. In terms of the second issue, there's no realistic dispute that there was a valid waiver in this case. The state hasn't argued that there was a valid waiver. The question is just whether or not it requires remand for a new hearing. Our cases say that when a claim in a post-trial motion has brought up new factual allegations, that is the hallmark of prejudice in this context and that it requires remand. In white, didn't they just reverse outright and say that they could only prove what made that cut with expert testimony? I believe that they did. I believe that they did. And because they didn't bring expert testimony, game over, conviction reversed? I believe that they did. Can you address forfeiture? Yes. Two points. One, I would agree, Justice Wright, that the state had not, in fact, raised forfeiture of the first issue. I did bring up plain error as an alternative argument in case the state had argued that we had forfeited. However, my argument is that we did not, in fact, forfeit. This was a situation where the issue was brought up at trial. It is true that counsel did not orally interrupt the judge's findings of fact, but he repeatedly renewed the issue through post-trial proceedings, and our contention is he was not, under those very narrow circumstances, required to interrupt the judge while the judge was passing his judgment. You raised an alternative argument. Even if it was forfeited, you can consider it based on plain error. Correct. What prong of plain error do you think it was? In my brief, I raised second prong. There are cases that say that these situations involve substantive rights, substantial rights, rather. I would argue, and again, it was not in my brief, but I would argue that, at least on the very narrow question that we're looking at, this was a credibility contest. The judge admitted it was a credibility contest, and you could if you chose to reach it under the first prong as well. Thank you. Have you argued a case in front of me before? I have, yes. I can't remember what I ate for breakfast, so I'm sorry. Okay. Well, thank you, Mr. Conley. You're very welcome. Thank you. Thank you both for your arguments here today. The matter will be taken under advisement. A written disposition will be issued. Right now we'll be in a brief recess for a panel change before the next case.